■ KB Operating, LLC, Doing Business as India Café & Grill, Respondent, v Margaret W. Briggs, et al., Appellants.
[871 NYS2d 676]—

In an action, inter alia, for specific performance of an option

to purchase real property, the defendants appeal from an order of the Supreme Court, Westchester County (Rudolph, J.), entered March 18, 2008, which granted the plaintiff's motion to enforce an order and judgment of the same court dated November 28, 2005, granting the plaintiff's cross motion for summary judgment on its cause of action for specific performance, and directed that the property to be conveyed was "2.7923 acres encompassed by the metes and bounds description and lease line laid out in the Ward Carpenter Engineers, Inc. survey dated May 22, 2007," and that the defendants were "to proceed with a conveyance of title to the leased premises to plaintiff for $755,000[ ] as a median valuation of the fair market value of the leased premises."

Ordered that the order is reversed, on the law, with costs, the plaintiff's motion to enforce the order and judgment dated November 28, 2005 is denied, and the matter is remitted to the Supreme Court, Westchester County, for further proceedings consistent herewith.

The defendants own real property located at 61 and 67 Old Route 22 in Armonk, designated on the Town of North Castle tax map as section 2, block 11, lots 9-2 and 9-4, respectively. Under a lease dated June 1, 2001, the plaintiff leased from the defendants a portion of that land known as the "premises," which the lease defines as "[a]ll that piece and parcel of land with the building thereon erected, known and designated as No. 61 Old Route 22, Armonk, New York." The lease afforded the plaintiff, as "long as it is in good standing and in possession of the premises," an option to purchase the "premises" in the event the defendants offered it for sale. In 2004 the defendants offered the entire property for sale, and the plaintiff, upon learning of the defendants' intention to sell, notified them that it planned to exercise its option to purchase the "premises." However, when the parties were unable to bring the sale of the "premises" to fruition, the plaintiff commenced this action, inter alia, for specific performance. Both parties moved for summary judgment, and the Supreme Court, in an order and judgment dated November 28, 2005, inter alia, granted the plaintiff's motion for summary judgment on its cause of action for specific performance. In that order and judgment, the court determined that the purchase option covered only the "premises," which the court concluded meant "that piece and parcel of land with the building thereon erected, known and designated as 61 Old Route 22, Armonk, New York." Additionally, the court determined that the absence of a provision in the lease requiring the entire property to be subdivided prior to the sale of the

"premises" did not render the purchase option unenforceable or illegal. The defendants appealed from that order, but their appeal was dismissed as abandoned.

Thereafter, the parties attempted to reach an agreement regarding the purchase price of the "premises," using the procedure provided for in the purchase option. Specifically, the parties were required by the purchase option to attempt to agree, on their own, to a purchase price. If they were unable to do so within 30 days, they were to retain separate appraisers. If the two appraisers were unable to agree on a purchase price, then the two appraisers would select a third appraiser, and the opinion of any two of the three appraisers would be binding.

When difficulties arose as to the exact boundaries of the "premises" to be conveyed and the valuation methodology the appraisers were to use, the plaintiff brought two separate motions to enforce the order and judgment dated November 28, 2005. In an order dated May 1, 2007, the Supreme Court directed the parties to prepare a survey of the premises and submit a list of appraisers so that it could select a third appraiser, which it did by choosing Steven Sherwood of Valuation Plus, Inc.

Subsequently, the plaintiff's appraiser Edward J. Ferrarone of Lane Appraisals determined that the "premises" consisted of the "southwestern sides of Lots 9-2 and 9-4." In reaching that determination, Ferrarone relied on a survey prepared by William Free, Jr., of Ward Carpenter Engineers, which, in turn, was based on a survey done by Roy Cary in 1999 which showed a "lease line" that ran through both lots 9-2 and 9-4. Employing a direct capitalization income approach and treating the plaintiff's lease as an encumbrance on the "premises," as set forth in the Ward/Cary surveys, Ferrarone determined the value of the "premises" to be $770,000. The court-appointed appraiser Sherwood also relied on the Ward/Cary surveys description of the "premises" as encompassing portions of both lots 9-2 and 9-4 and showing a "lease line" running through both lots 9-2 and 9-4. Using a sales comparison approach, Sherwood valued the "premises," as set forth in the Ward/Cary surveys, at $1,970,000 when the plaintiff's lease was not treated as an encumbrance, or $1,725,000 when the plaintiff's lease was treated as an encumbrance. Alternatively, using a direct capitalization methodology, Sherwood valued the "premises," as set forth in the Ward/Cary surveys, at $740,000. Sherwood concluded, however, that "greatest . . . weight" should be given to the sales comparison approach.

Following the completion of these appraisals, the plaintiff

moved for a third time to enforce the order and judgment dated November 28, 2005, asking the court to direct the defendants to convey the "premises" to it consistent with the boundaries described in the Ward/Cary surveys and encumbered by its lease, for a purchase price of $770,000, $740,000, or the median thereof, $755,000. The court granted the plaintiff's motion and ordered that the "premises" to be conveyed consisted of "2.7923 acres encompassed by the metes and bounds description and lease line laid out in the Ward Carpenter Engineers, Inc. survey dated May 22, 2007," which was based on the 1999 Cary survey. The court also directed the defendants "to proceed with a conveyance of title to the leased premises to plaintiff for $755,000[ ] as a median valuation of the fair market value of the leased premises."

As the defendants correctly contend, the Supreme Court, in the order appealed from, violated the doctrine of the law of the case by redefining the "premises" in a manner inconsistent with that term as set forth in the order and judgment dated November 28, 2005 (see e.g. Abbas v Cole, 44 AD3d 31, 37 [2007]; Hampton Val. Farms, Inc. v Flower & Medalie, 40 AD3d 699, 701 [2007]). In the order and judgment dated November 28, 2005, the court determined that the "premises" meant "that piece and parcel of land with building thereon erected, known and designated as 61 Old Route 22, Armonk, New York." While the court did not define the boundaries of the "premises" in that order, it clearly did not include property on lot 9-4, as 61 Old Route 22 is limited only to portions of lot 9-2. Moreover, the Supreme Court directed that the order and judgment be filed against only lot 9-2. However, in the order appealed from, the court, relying on the Ward/Cary surveys, defined the "premises" as including property on lots 9-2 and 9-4. As such, the court's redefinition of the "premises" in the order appealed from violated the doctrine of the law of the case (see Abbas v Cole, 44 AD3d at 37; Hampton Val. Farms, Inc. v Flower & Medalie, 40 AD3d at 701).

Although we are not bound by the Supreme Court's determination of the "premises" set forth in the order and judgment dated November 28, 2005 (see Mosher-Simons v County of Allegany, 99 NY2d 214, 218-219 [2002]; Latture v Smith, 304 AD2d 534, 535 [2003]), our review of the record indicates such determination was correct. The Cary survey was prepared in 1999, two years prior to the commencement of the plaintiff's lease. Moreover, the "lease line" it purports to show extends into lot 9-4, which is not a part of the "premises" leased by the plaintiff. The description of the "premises" set forth in the order and

judgment dated November 28, 2005, is also consistent with the amount of real estate taxes the plaintiff was required to pay under its lease (see Waverly Corp. v City of New York, 48 AD3d 261, 265 [2008]). Accordingly, we remit the matter to the Supreme Court, Westchester County. The parties must commission a new survey of the "premises," as defined in the order and judgment dated November 28, 2005. The parties have agreed to bear the costs of the new survey equally.

Upon the completion of the new survey, the parties must undertake new appraisals, in which the "premises" is treated as unencumbered by the plaintiff's lease (see Barbarita v Shilling, 111 AD2d 200, 201-202 [1985]; Sid Farber Hempstead Corp. v Buckley, 65 Misc 2d 237, 239-240 [1970]). If the parties' appraisers are unable to agree on a purchase price, the court may then determine the fair market value of the "premises" (see Marder's Nurseries v Hopping, 171 AD2d 63, 71-72 [1991]).

Moreover, before any conveyance may occur, in accordance with the Town of North Castle Town Code § A216-2 and § A216-12, the defendants must submit an application for subdivision approval to the Town of North Castle Planning Board. To the extent this issue was the subject of the order and judgment dated November 28, 2005, the defendants' appeal from which was dismissed for want of prosecution, we exercise our discretion to reach it (see Faricelli v TSS Seedman's, 94 NY2d 772, 774 [1999]; Andino v Samenga, 287 AD2d 425 [2001]). Mastro, J.P., Miller, Balkin and McCarthy, JJ., concur.